The Building of the Madison History Museum That takes a roundabout way to getting us right back where we began, which is, what does an offense mean? What does by its nature mean? Et cetera. Justice Thomas wrote at length on this topic and lost. So his textual disputations with the plurality and demia did not carry the day in the end. Well, I want to know what your answer is, though, about that text. Because, as we know, Justice Gorsuch and the Chief Justice were open on the question of whether the categorical approach should apply. Well, the text includes an offense. In demia, the plurality said that an offense is generally meant to mean how a crime is normally committed. And that's all the more clear when coupled with by its nature. By its nature is the inherent qualities of a given crime. But why isn't Justice Thomas' argument at least plausible, his textual interpretation? Thomas was taking a more complicated road than I think he needed to take. Haven't we used by its nature for a conduct-based inquiry in Dodge for the Sex Offender Notification Act? Yes, Your Honor. So we looked at it. Despite that language, by its nature, we applied it in a conduct-based approach. Yes, and the statute there under SORNA was markedly different here in one critical way. That SORNA statute read as follows, quote, any conduct that by its nature involves sexual. This one, though, is placed in tandem with the operative clause, which is very conduct-based, and language that follows it that talks about in the course of committing the offense. That's conduct language that it's in the middle of, isn't it? Not enough to carry the day, Your Honor, because by its nature in the residual clause is paired with an offense, and there's no any conduct language in sight in the residual clause. We'd have to go far afield from that finite set of words to decide, as Your Honor said, that we're then to leap over to the conduct that's described. You say a finite set of words, but you at least concede that the court should construe 924C1 along with 924C3. You at least concede both provisions must be read together. Yes, Your Honor. Okay. So when we're looking at what 3 means, subsection C3, we also look at C1. At least I know you disagree about what the outcome is, but you do agree we must read both provisions, and indeed they're the same subsection, C, together. Is that correct? They should be read together to give meaning to all of it. I don't agree with that, Your Honor. So you don't think they should be read together at all? Not in this particular issue, Your Honor. Okay. Even though it uses the word crime of violence in C1, we look at the definition in total isolation. We don't look at it in reading the rest of the language in the operative provision. Is that your position? It is my position, Your Honor. Okay. Yes. That we don't go outside the boundaries of 924C3B. One of the words that you focused on textually, I'm over here, was the word offense. You focused on in the nature of, you focused on the word offense, and I want to talk about that word. In the Jawan v. Holder, the Supreme Court says that, and they're trying to determine the meaning of a phrase, an offense in which a law succeeds $10,000. They hold specifically in that context that it referred to the specific acts involved and, quote, did not require a categorical approach. And they write that, in ordinary speech, words such as crime, offense, felony, and the like sometimes refers to generic crimes and sometimes refers to the specific acts in which an offender engaged on a specific occasion. Hasn't the Supreme Court suggested, in varying ways, in different contexts, at different times, that these words are, the words I've referenced, sufficiently malleable and open to interpretive debate to yield either conclusion that maybe you'll apply a categorical approach and maybe you won't, depending on context? Would that be a fair reading of the word offense and the meaning of that word? I prefer the quotation from DeMaia, Your Honor, in which the Court said that the word offense, simple references to it. No, no, I understand, and you can go back to Taylor and find similar stuff. The problem I have is that, looking at the spectrum of Supreme Court cases, it seems to me they've used at least the word offense in different ways, in different contexts, sometimes staking out a categorical position and sometimes not. I do agree with that, Your Honor. However, that's the rub, is what is the set of words around it? When you don't have the problem of utter impracticality and you don't have the problem of Sixth Amendment fact-finding by a judge, those problems have disappeared in this context. Your Honor, I see my time is up. May I answer your question before I sit down? Please. We must look at this particular set of words that have been given to us in this particular order. So in the context of 16b and 924c3b, an offense has a meaning that leads us inevitably to decide that we look at how a crime is generally committed. There may be other statutes. You cited one in Nijiwan in which an offense is surrounded by different words, different choices by Congress that were meant to tell a court to target his evaluation of the facts on the ground. But here, this exact set of words that Congress chose so carefully requires a categorical approach, and Demeyer told us so. Thank you, counsel. You'll have your full five minutes to reply. Ms. McBath. May it please the Court? My name is Elizabeth McBath, appearing on behalf of the United States. This Court should maintain the categorical approach when deciding whether or not a predicate offense qualifies as a crime of violence under 924c3a. Let me ask you something about the text. If you take the definition from 3c3b and plug it into c1a, and you strip out some of the irrelevant stuff, or at least for our purposes irrelevant, it would read, any person who during and in relation to any crime that by its nature involves a substantial risk that physical force may be used, et cetera. At the time of a case-specific approach focus, we already know what the crime was. And may be used sounds predictive as opposed to descriptive. If Congress intended a case-specific approach, why wouldn't it have said any crime in which there was a substantial risk as opposed to there is a substantial risk that physical force may be used? There are lots of different ways that Congress could have drafted this statute, absolutely. When we look at all of the phrases that they include here in offense, the phrase by its nature involves in the course of committing the offense. But as my colleague just, I think, made the point, they've been interpreted both ways. Categorically and case-specific. And may be used looks to the future or to the possibilities existing at that time as opposed to could have been used or might have been used. What am I missing? That's certainly one interpretation. I think that the defendant's argument rises and falls on the text and whether or not the constitutional avoidance doctrine is at play here. And the defense counsel says the constitutional avoidance doctrine is not at play because the statutory text is crystal clear. And the only time that the constitutional avoidance doctrine can apply is if there are other reasonable interpretations on how to interpret these words together. Why is may be used a reasonable interpretation? Why is case-specific, non-categorical approach a reasonable interpretation of may be used? So as Justice Thomas pointed out in his dissent, the may be used, that is one example where the phrase by its nature, yes, we could interpret it one way as a metaphorical in the ordinary case approach. But when we add the may be used, then it becomes reasonable to also interpret it as the defendant, as Judge Pryor pointed out, the defendant not being able to benefit from the fortuitous fact that physical force actually didn't happen. So in other words, you might have had a stash house robbery where everyone shows up with guns or a carjacking where they show up with guns and a baseball bat and it's fortuitous that no one got hurt, that no violence was actually used. It would nevertheless be a case where the offense by its nature involved a substantial risk that force would be used. Exactly. It's difficult to imagine one of those cases which wouldn't fit under A. Under the elements clause? Yeah. That's right. I think most crimes that the government will charge where we're also charging a 924C offense will qualify under the elements clause. Absolutely. There are, however, a few statutes that we will lose in being able to charge a 924C that we think oftentimes these crimes are committed as crimes of violence. Because it's not categorically a crime of violence, but you could put the issue to the jury. Is that why? Well, it's because it does not have as an element. So, for example, let's take arson and kidnapping. So arson does not qualify under the elements clause because federal arson does not require that the property has to be of another. Kidnapping does not qualify under the elements clause because you can commit federal kidnapping through deceit or in vagueling. And because of that, it won't qualify under the elements clause, but we know that many times kidnapping is going to be done in a very violent way. And so to void 924C3B for vagueness, that means that we'll lead to the absurd result that crimes that are committed in an extremely violent way, we can no longer call them crimes of violence. You will also, under that paradigm, necessarily lose a number of attempt offenses, right? A number of what, Your Honor? Attempt offenses. Well, I think attempt will still qualify under the elements clause. Some might, but some might not. Think, for example, of a carjacking case where two individuals decide to carjack a vehicle that's a block away. They both have firearms in their own car, but they like the other car better, so they're going to try to get it. They walk out of their car. They put their guns in their waistbands. They start walking. A police officer who luckily knows what he's doing figures out what they're about to do and stops them halfway to the other car. If you use a conduct-based approach, right, no force was used in that case, right? Right. Because they got stopped ahead of time. If you used a categorical approach, you might well conclude that that attempt offense, by its nature, would create a substantial risk that force would be used against a person or property of another, right? So there are going to be some of those inchoate offenses that are going to fall on one side of the line or the other. I think that that could play out that way, yes, Your Honor. I think that if we charge attempt, now the jury is going to decide whether or not the elements of attempt have been met and that the jury decides whether or not a substantial step was taken. But that substantial step, I'm sorry to interrupt. This will be my last point and I'll let you finish. A substantial attempt may not be the step that involves the use of attempted use of force. Right. You could take a substantial attempt towards the commission of a crime without getting to the point where you actually use or try to use force. You may get stopped earlier than that. But if you've done a ton of preparation and a lot of work up to get to that point, that might still be enough to convict you of attempt in and of itself. Right. And under the elements clause, the jury is not going to decide the substantial risk portion. The jury will be instructed that this offense qualifies as a crime of violence and then the jury goes on to decide the other elements of 924C. Doesn't that create a Sixth Amendment problem if the jury gets instructed that this constitutes a crime of violence? Under the elements clause, then whether or not something is a crime of violence, whether or not it has as an element, the use of attempted use or threatened use of physical force is a pure question of law. Why? If there's a Sixth Amendment problem on the risk of force clause, going back to Judge Hull's question about whether you read these provisions together, if there's a Sixth Amendment issue that requires you to submit by its nature, maybe use, substantial risk, all of that to a jury in a risk of force clause, why are you not required to submit similar, although different, questions under the elements clause? Why should a judge be able to figure out one without violating the Sixth Amendment and not figure out the other? Yes, Your Honor, because the elements clause requires a categorical approach. That's exactly what Taylor set up. That's exactly what Taylor said in that when we apply the categorical approach, we no longer have the Sixth Amendment problem. Because it's using legal language, elements, not conduct language like committing. It's an entire question of law. You look only to the statutory text and look at the elements. Now, for conspiracy— But why shouldn't the jury have to figure that out in difficult cases? There have been numerous cases in the federal reporters where judges have disagreed about the elements of a given offense under the use of force clause of 924C. If there are those disputes, why shouldn't those, for Sixth Amendment purposes, also be put to a jury? So the elements clause— Counsel, in your answer, the juries don't decide issues of law. Exactly. And the Supreme Court's held that the categorical inquiry is an issue of law. Absolutely, which is what I had said before. It's a pure question of law. That is why there's no Sixth Amendment problem. If Your Honor is asking me whether or not we should abandon the categorical approach for the elements clause, is that what— No, I wasn't asking you that. Okay, so the answer to— And the jury would still be instructed on what the elements of the related offense are. So carjacking, for example, the jury will have been instructed by the district court what the elements are, and then we'll have to find whether, in fact, those elements were satisfied. Absolutely. The jury has to find first that the defendant committed the underlying crime of violence. So the jury would have to find that the defendant, in fact, engaged in Hobbs Act robbery. And then the jury would have to decide whether or not a defendant used or carried during in relation to or possessed in furtherance of that Hobbs Act robbery. How would you phrase a question to a jury in a Hobbs Act robbery case for the risk of force clause? What would you ask the jury to find? Well, so what we are proposing is that if courts would look first to whether or not the elements clause controls. If the elements clause controls— It does not in our—in my hypothetical. Okay, so— So you're forced to, as you said, give the issue to the jury. So what would you ask the jury to find? All right. So a jury instruction for, let's say, kidnapping or arson or conspiracy to commit a violent felony, which is where we're saying the risk of force clause controls. We would ask the jury to first find that the defendant committed the kidnapping. So same as before. Second, ask the jury to find, did the defendant use or carry during in relationship to the kidnapping a firearm or possess during in relation to the kidnapping a firearm? Third, and this is what's new, this is where the jury would be instructed, did the defendant, while committing the kidnapping, was there a substantial risk that physical force would be used during the kidnapping, during the course of the defendant's committing the kidnapping? Of his actual kidnapping offense. Of his actual kidnapping. Exactly. So we are no longer imagining a hypothetical judge abstraction about what does the ordinary kidnapping look like. The jury would be considering— But you say in your brief that, you know, the quote is the district court should caution the jury that it may not determine that the underlying offense involved a substantial risk solely because the defendant or one of his accomplices had a gun. So, you know, on some level they do have to imagine something other than the facts before them to make this determination, don't they? Well, so in St. Hubert, this court counsels that the jury cannot ignore the fact that there was a gun in looking at whether or not there was a crime of violence, and certainly whether the other elements have been met. But what our point was is that that is, the jury shouldn't assume that just because a gun happened to be present at the crime that the government has met its burden of proving the crime of violence element. So on the verdict form, what does it say? One says decide, you know, with the gun. Next, decide without the gun. I think it would be, the jury form would say those three elements. Well, the jury would be instructed on those three elements. Then the instructions could also just caution the jury that they are not to consider the sole facts. She's asking about the verdict form. What does the verdict form say? Guilty or not guilty. The instructions could counsel. But they've got to decide whether it's a crime of violence on the verdict form, right? No. They decide whether there's a substantial risk of violence. Well. I think that. But you say that the court should caution the jury that it may not determine that the underlying offense involved a substantial risk of physical force just because there was a gun. So my question is, what does the jury, the verdict form that goes out with the jury, say to get at that question? Well, I think that the instruction is these are the elements. And so the verdict form would say guilt or innocence. You're saying you don't have to give the jury an interrogatory. Right. There doesn't have to be a special verdict form. But I think the thrust of the question is let's assume, arguendo, that everyone wanted to cross the T and dot the I. And you wanted to ask the jury more specifically than guilty or not guilty, what would you ask? If you wanted an interrogatory that broke it down, bear with me, into three pieces, what would you have it say? So ask the jury to first find if the defendant committed the kidnapping. Then ask the jury to find yes or no if the defendant used or carried or possessed that element. And then ask the jury to find if there was a substantial risk that physical force would be used during the course of committing the offense. But in your brief, you say the court should caution the jury that it has to make that determination without, you know, not just because there was a gun involved. So the language that you just gave us doesn't really do that, does it? Well, I think our point, Your Honor, was simply during the instructions themselves. So explaining what physical force means. I know. I'm back to the verdict form. Right. And the verdict form language that you just gave us doesn't make that distinction. Are you saying it's not necessary? I don't think it's necessary because the jury is deciding whether or not. By necessary, this won't be ambiguous. By necessary, you mean you don't think it's necessary to put the instruction that the judge has already given in the verdict form. Correct. Not that you don't think it's necessary to instruct the jury that a gun alone doesn't create a substantial risk. Correct. So what you're saying is if the jury convicts them, then you just assume that as a part of the process of coming to the determination to convict the defendant, they decided based on the instructions given them that it was a violent crime. They found that every element, the government met its burden of every element of the offense charged. Now, just to be clear, the jury would be finding this fact, this element, element number three, about whether something is a crime of violence only where the government is proceeding in a case where that crime does not fall under the elements clause. Well, that's not true because in this case, you argue that this qualifies a crime of violence under the elements clause. And here we are. Well, exactly. I mean, we believe that this case can be decided on the elements clause. And that is the Department of Justice's position that we will not proceed under C-3B if we have C-3A. We're not going to make this a jury issue if we have the elements clause already satisfied. We've got the big crimes already covered by the elements clause. We have bank robbery, armed bank robbery, Hobbs Act, and carjacking. This case can be decided under C-3A. If you proceed under 3C-B, aren't most of these crimes resolved by guilty plea? And if that's the case, then how does it work? There's an evidentiary hearing that takes place? So if someone pleads guilty and we're talking about a crime that would fall under the risk of force clause, so kidnapping, arson, sex trafficking, then the defendant would have to be told the element of this offense is the government would have a burden of proving that the way you committed this kidnapping involved a substantial risk that physical force would be used during the course of committing the offense. That would now be an element that the defendant would need to be apprised of that the government would have to prove to the jury. So the plea colloquy would add that requirement, would add that element in. And then the defendant would have to plead to and acknowledge that or at least agree with the proffer that he had, in fact, created a substantial risk that physical force would be used. Yes. And subject himself to a significantly higher penalty, which might result in fewer guilty pleas, right? Perhaps. And that could very well be the case, but I think that... Well, isn't that part of the bargain? I mean, he either agrees to plead guilty to that, C-3B, or not. And the government can bargain it away if it wants to, and he can bargain it in for a lighter sentence once he does. Right. And the fact of the matter is the core of cases where this would come up, it's very clear that there was a substantial risk that physical force would be used. So a kidnapping, yes. Let me ask you this. By its nature, what in this case, other than the presence of the firearm, shows that by its nature this conduct involved a substantial risk of physical force? So the way that the carjacking or the attempt at carjacking played out was that the defendant and her co-defendants came with a baseball bat, with an AK-47 assault rifle. All right. Is the high-caliber semi-automatic weapon enough? In this case, it was brandished? Absolutely. I think even if it wasn't brandished here, it could be, and that's a substantial jury question. Would we argue it as the government? It could be brandished? If it was brandished, I think we would definitely charge it and argue it, that it was a crime of violence. So possession of a firearm isn't a conduct that by its nature creates a substantial risk of physical force, but brandishing a firearm does? I can't imagine a situation where if someone brandished it, there would not be a substantial risk that physical force would be used. In this case, it was brandished. A neighbor came out wielding a gun, and shots were fired. A baseball bat was swung. Well, we know physical force was used. Is that what you look at? I thought you have to stop before physical force is used because we're talking about a substantial risk. Maybe. The jury would look at all the facts. So it didn't necessarily require that guns were fired. That's what we had here. It's certainly an easier case for the jury. It seems to be a slam dunk on that element. But there will be other cases where it's not going to be so clear. And our argument is that that's a jury question. But isn't it solely the presence of a firearm in that case that makes it qualify as a crime of violence? Which is what you were just speaking with Judge Martin about a few minutes ago. No. It's not just the presence of the firearm. If you look at all of the facts, we had an AK-47. It was brandished. The defendant was brandishing it about so the victims knew that they could be shot and killed. A neighbor saw the AK-47 brandished about. A neighbor gets his own gun and comes out. But before all that happened, they hit the juvenile with a baseball bat. Yes. Before the gun was ever shot. So why wouldn't hitting the juvenile with a baseball bat constitute physical force? In this situation, I think it would. So maybe used is proved by the fact of the actual use. So we get back to what about a case where it was not actually used but yet you're charging it may be used. Such as an example I thought of is where you've got a bank robbery. Everybody's outside the bank ready to go in. You get them on tape all the time. You say we're getting ready to arm the bank. We're going to tie up the guard. We're going to shoot the guard. Whatever they say. And as they enter the bank, they're arrested. So that would be a may be used. The defendant would know a substantial risk of physical force may be used. Yes. Does that qualify? I believe it would. It would be a sufficiency of the evidence question. And the government would have to prove beyond a reasonable doubt the element of a substantial risk of physical force. Do you agree with that? I do. And I will also point out that this element that the government has to prove, the crime of violence element, is separate and distinct from the actual use or carrying of the firearm. So something could be a crime of violence without necessarily involving the gun. So let's say we just had a baseball bat here. We still have to prove that a gun was used in other ways to further the crime. I would have thought that your answer to Judge Hull's question would have been if the posse shows up, one of whom they're armed with a baseball bat, this is their M.O. When they show up to carjack somebody with a baseball bat, forget about the AK-47. That itself would pose a substantial risk of physical force. Absolutely. But under 924C, we also have to show that a firearm was used. Right. You've got to show the gun separately. But to address Judge Martin's question, forget about the gun. We're not even going to use the gun to prove the violence of the crime. The baseball bat proves the violence of the crime. That's true. When these people show up and jump out of the minivan, one of whom is armed with a baseball bat, even before they whack the little girl in the mouth with a baseball bat, there's a substantial risk that physical force will be used. Absolutely. Let me ask you a slightly different question. Are we allowed to treat different portions of the same definition in a different manner when deciding whether to use a categorical approach or conduct-based approach? You understand the thrust of my question. Can we treat 924C3A one way and 924C3B differently? Absolutely. I think that was Congress's intent to do so. Doesn't Taylor suggest something different than that? The reason I raise it is in Taylor, they were considering the singular question of whether the enumerated offenses had to do with the enumerated offenses listed in ACCA. That is to say what offenses could qualify as the enumerated offense of burglary, and yet when they discussed the matter, they swept with an awfully broad brush. The way that I read it. Looked elsewhere to find the answer. So we look at the text itself, we look at the context. The way I read Taylor when they're talking about the concerns, the reason that they are employing the categorical approach, it all goes back to the enumerated offense clause being connected to state offenses, 50 different state offenses, the vagaries of state law, and trying to do. The reason I say it is, for example, the first thing they say in Taylor, and I quote, the language of ACCA generally supported the inference that Congress intended the sentencing court to consider only the fact of conviction of a given offense. It looks like they were speaking pretty broadly. You know, I think Taylor, when it's looking at the text, it relies on the fact that the word involves was not in there. We have the word involves in this. It also relies heavily on the fact that ACCA required a conviction for. And Taylor explicitly says the language doesn't say committed, and we have that language here. So when you look at all of the phrases together, it is a reasonably plausible way to interpret the statute as exactly the way this court did in Dodge with the same language. The government has never made that argument before. I'm not aware that the government has ever made this argument in the 11th Circuit. You're right. What's changed since our opinion in McGuire? In fact, the government urged the court to apply the categorical approach in McGuire. What's changed between then and now? Demeyer. Demeyer changed the landscape. Well, Demeyer was even clearer as a result of Demeyer because it applied the categorical approach for an identically worded statute. It's even clearer now than it was before McGuire. So before Demeyer, we had no reason to think that 924C3b, the Risk of Force Clause, had any constitutional concerns at all. We didn't have any reason to believe that Section 16 did. Leocal was the prior decision, and it was unanimous in interpreting Section 16a and b. So what's changed is Justice Thomas' dissent. What has—that, yes, the courts are asking us to— asking the Solicitor General's office to revisit— You're asking us to adopt Justice Thomas' dissent. He was unable to persuade a majority of his colleagues to reject the categorical approach in Demeyer. I wouldn't say that he was unable to persuade the majority of his colleagues. I would say that Gorsuch has asked us, has asked the government to reevaluate, and Gorsuch has explained, I want a robust process on this. I want questions and answers. I want briefing. I want to analyze this very— Counsel, isn't your best answer to that, that while categorical approach might be the best interpretation under the constitutional avoidance doctrine, all there has to be is a feasible interpretation, and only after Demeyer did the constitutional avoidance doctrine kick in? Exactly. That's exactly right. After Demeyer. I thought you were getting around to that. Well, and I started my argument with that, that after Demeyer there are now serious constitutional concerns. Let me give you an opportunity to respond to something that you didn't get a chance to respond to in brief. As you know, amicus briefs are supposed to be filed at the time of the brief they support, but the enactals amicus brief in this case was filed two days after you filed your brief, so you didn't have an opportunity to respond to their, in its well-written brief, basically arguing the rule of lenity. Would you like to respond to that now since you didn't have a chance to do it in your brief? Your Honor, I don't think that we need to get there. Under the rule of constitutional avoidance, if there's a reasonable, plausible way to interpret this statute, which there is based on everything the Supreme Court has said, different ways to interpret the exact words we have here, exactly how this court interpreted a SORNA provision, because there is a reasonable way to interpret this to save it from constitutional concerns after Demeyer, the constitutional avoidance doctrine controls. This court has a plain duty to interpret the risk of force clause. Well, the reason you are answering that way is because the rule of lenity is a canon of last resort. It's only after you've applied all others like the canon of constitutional avoidance, and if ambiguity still persists, then you apply the rule of lenity to benefit the defendant? Correct. And the rule of constitutional avoidance is squarely at play here. It should be used. Ms. McBath, you also didn't have an opportunity to correct a misstatement in your brief. You attributed a statement from Justice Gorsuch to Justice Roberts. I did. Is that right? I mistakenly did that, and I apologize. And that's, I mean, that's big. That's huge because Justice Roberts hasn't really quarreled with the categorical approach, has he? He was silent. He was silent on it, Your Honor. Okay. Thank you, counsel. Mr. Dodge, five minutes. The government proposes a number of ways to help jurors make a decision on the residual clause, but this Court is the wrong audience for those arguments. Congress needs to do that, and it has not. For 30 years, Congress has watched federal appeals courts apply the categorical approach to 924C and has done nothing. Congress has amended 924C in many other ways. But that's like the weakest conceivable indicia of congressional intent, right, congressional inaction in the face of lower courts doing thus and such. And surely we can't be bound by that. We've got to get the statute right. The Court's not bound by that, but it certainly strengthens my view on the congressional intent. We combine it with the Supreme Court telling us in Taylor. Yeah, but for a long time, three times the Supreme Court of the United States upheld the constitutionality of the residual clause in ACCA before then changing course very recently in Johnson. So for 90 percent of that period, Congress was being told nothing wrong here, it's all constitutional. 924C is a different context because Congress has twice amended the statute in response to Supreme Court cases that it didn't like. Back in the 1980s and early 90s, it was amended. But the Supreme Court hasn't said anything about 924C. No, Your Honor. That's why we're here. Not on this particular clause, the residual clause. It had the Supreme Court did make findings or holdings on 924C in Simpson in the early 80s and then in Bailey in the mid-90s. And both times, Congress expressed displeasure with those holdings and amended the statute to write it the way Congress wanted to. It did not do so. It has not changed a single word on the crime of violence definition in 30 years since it created that provision. I understand that we are here and we certainly have talked about subsection B. Do you, as your client, lose under subsection A, the alternate holding proposed by the government and also by our prior panel? The court is certainly free to evaluate the elements clause, but I ask the court instead to spend its energy on the residual clause, on the two questions that were certified here. Do we look so non-energetic you think we can only do one of those things? No, no. And you argued before the panel that it didn't qualify under the elements clause either. Is that not correct? I did, Your Honor. The main panel argument was the residual clause is unconstitutional and it doesn't qualify under the elements clause, correct? Yes, I mean— So throughout this case, the defendant has maintained it doesn't qualify because it's an attempt at carjacking as opposed— I don't even think you concede carjacking qualifies, do you? You don't even concede carjacking qualifies. You're correct on all of that, Judge Hall. Okay. So you threw out the attempt at carjacking wouldn't qualify under the elements clause. That's how it's been litigated. That's right. And I maintain that today. And that's why you want us to first deal with the residual clause. Absolutely. And that's not the only reason. This court has taken that issue en banc because it has great importance throughout the circuit. As Your Honors know, there are countless cases waiting for an answer from this court. If this court sheds the categorical approach and turns sharply toward the fact-based, it will be the first and only federal appeals court to do so. This court will then be an outlier on that issue. The government has also talked about the fortuity for a defendant who somehow commits violent behavior but then skates free on a 924C conviction because the residual clause is gone. But that's not entirely fair. A district court has plenty of tools to punish that violent behavior and to punish it harshly. A court will have a much higher guideline range without 924C's presence. The court can depart or vary upward from that guideline range as high as a stat max. Curiously, why do you think the Supreme Court originally adopted the categorical approach? In Taylor, the Supreme Court told us first and foremost the text. The text, just to be fair, is different, right? Because what Taylor said about the text was it refers to convictions not to conduct. Yes, Your Honor. Do we have the word convictions in this statute? No, Your Honor. But the Supreme Court in DeMaia said that is a superficial textual difference that has no effect on the outcome of whether to apply the categorical approach or not. And the government has really dropped that part of its argument as well. Well, I thought DeMaia was talking about different superficial textual differences. With all due respect to the panel in this case, I think that DeMaia fairly well demolishes the textual differences that the panel here identified. But convictions was identified in Taylor and then carried through into Johnson. That's what the Johnson court said again, quoting Taylor. This statute is significant because it refers to the word convictions. And that's what's different in part, one of the many things I think that's different about this statute. Your Honor, my time is up. May I answer your question? You are accurately assessing those other cases. However, the fact that that statute, the ACCA, has the word convictions doesn't mean that that's the only time that this inquiry applies. DeMaia has expanded it now beyond the ACCA to 16b. And as you know, that's identical language to what we have in 926. But just so we're all sort of on the same page, back to Judge Marcus's question, you're right, that's not the only reason. But as I count them up, I've got five or six. I'm more generous than Judge Marcus is. I'll give you five or six props that the Supreme Court has used over the years to prop up the categorical approach. One is language like convictions. One is the absence of any contrary language, conduct-based language. One is the utter impracticability. One is the Sixth Amendment. And then the last bit is the by its nature. And as I sort of just walk through those, the only one that I can see really favors you still is the by its nature language. And there you've got Judge Jill Pryor's question about Justice Thomas's dissent and why isn't that a reasonable interpretation of by its nature. So I'm just at the end of all of this, I'm left thinking none of the reasons that the Supreme Court has thrown out there for propping up the categorical approach really still applies to this statute, except maybe by its nature. And it's sort of like this halfway but see Justice Thomas's plausible interpretation. The five or six props that you cited, Your Honor, are not equals. The text comes first. And the Supreme Court has told us often that if the text answers the question, then we stop there. And that's exactly the case here, Your Honor. Thank you, counsel. Let me make one announcement before we take that case under submission. Probably should have done it at the beginning. Judge Joe Flatt is not here today, except he is here. He's been monitoring the entire argument by telephone hookup, had the opportunity to ask any questions should he wanted to. And he's also going to participate in the conference, so he will be participating in the decision of this case. That said, thank you, counsel, on both sides. I thought it was well presented and your briefs are well written as well. We'll take that case under submission. All rise. Judge, we'll be joining you in a couple of minutes. All rise.